**UNITED STATES DISTRICT COURT**

**DISTRICT OF MINNESOTA**

| | |
|---|---|
| Michael Broderick,<br><br>  Plaintiff,<br><br>vs.<br><br>Hartford Life and Accident Insurance Company,<br><br>  Defendant. | Case No.: _____<br><br><br>**PLAINTIFF'S COMPLAINT** |

Plaintiff, through his undersigned attorneys, states and alleges as follows:

**PARTIES**

1. Plaintiff Michael Broderick began working for Xcel Energy, Inc. ("Xcel") in 2006. As a consequence of his employment with Xcel, Plaintiff participated in The Xcel Energy Health and Welfare Plan ("the Plan"). The Plan included short and long-term disability benefits ("STD" and "LTD" benefits).

2. Xcel funded the Plan through the purchase of group short and long-term disability policies from Defendant Hartford Life and Accident Insurance Company ("Hartford"). The LTD disability policy has the policy number GLT-675880 ("the LTD policy").

1

3. Hartford is an insurer licensed to do business in the State of Minnesota. Hartford was at all relevant times a fiduciary, claims administrator, and insurer for the LTD plan.

## GOVERNING LAW, JURISDICTION AND VENUE

4. This complaint arises under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §1001 *et seq*. ("ERISA"), and the principles of federal common law developed thereunder.

5. The Court has jurisdiction over this complaint pursuant to the jurisdictional provision of ERISA, 29 U.S.C. §1132(e)(1), and federal question jurisdiction under 28 U.S.C. §1331.

6. Venue is proper in this district pursuant to 29 U.S.C. §1132(e)(2) because this is the district where the breach of ERISA took place and where the defendant may be found.

## FACTUAL ALLEGATIONS

### *Policy Language*

7. Under the LTD policy, "disability" is defined as follows:

*You are prevented from performing one or more of the Essential Duties of:*
  *1) Your Occupation during the Elimination Period;*
  *2) Your Occupation, for the 24 months following the Elimination Period, and as a result your Current Monthly Earnings are less than 80% of your Indexed Pre-disability earnings;*
  *3) After that, Any Occupation.*

8. *"Essential Duty"* is defined by the LTD policy as follows:

*Essential Duty means a duty that:*
  *1) Is substantial, not incidental;*
  *2) Is fundamental or inherent to the occupation; and*
  *3) Cannot reasonably be omitted or changed.*
*Your ability to work the number of hours in Your regularly scheduled work week is an Essential Duty*

### *Plaintiff's Disablement*

9. Plaintiff worked for Xcel for nine years. His most recent position was that of Credit and Collections Representative. In this position, Plaintiff worked with clients of Xcel to answer questions about billing and collections, and to establish payment arrangements.

10. Plaintiff's position required that he spend the majority of his time seated at a desk performing tasks such as talking on the telephone and typing at a computer.

11. Plaintiff suffers from cervical degenerative disc disease and cervical spondylosis which causes headaches, neck pain, difficulty concentrating, and some dizziness/balance issues.

12. Plaintiff underwent a cervical fusion of C5-C7 on 03/29/11. He returned to work full-time shortly after the surgery.

13. However, on 07/07/12, his doctor restricted him to working no more than five hours per day due to increased neck pain. Plaintiff made a claim for partial STD benefits under the Policy, which Hartford approved.

14. Unfortunately, Plaintiff's pain became even worse and he stopped working altogether on or around 12/07/12. Plaintiff exhausted his STD benefits and Hartford approved his claim for LTD benefits on or around 01/31/13.

15. Plaintiff had a cervical laminectomy of C3-C7 performed on 02/15/13 to resolve increasing pain, numbness, headaches, and other symptoms. He attempted to return to work part-time in May 2013, but quickly went back out of work due to increased symptoms.

16. Plaintiff had a lumbar decompression and discectomy to L4-L5 on 06/19/13. He again attempted to return to work part-time a few weeks later, but was unsuccessful.

17. Plaintiff underwent surgery on his right elbow to repair nerve damage on 02/17/14. He attempted to return to work for a third time in June 2014. He stopped working again in September 2014 due to migraines and neck pain. On 12/03/14, Plaintiff underwent a radiofrequency ablation of C2-C4 in an effort to alleviate his symptoms.

18.     Hartford wrote a letter dated 12/19/14 to Dr. Roushdy, Plaintiff's treating physician, and requested information about Plaintiff's restrictions and limitations. (*See* 12/19/14 letter from Hartford to Dr. Roushdy attached as **Exhibit 1**).

19.     Specifically, the letter from Hartford asked that Dr. Roushdy indicate the following:

- *Please advise if in your opinion Mr. Broderick has the functionality needed for Sedentary work as defined below on a full-time basis (8 hours per day, 5 days per week)*

    *__ I agree that Mr. Broderick is currently able to perform Sedentary Work on a full-time basis.*
    *__ I disagree that Mr. Broderick is currently able to perform Sedentary Work on a full-time basis.*

- *Please advise if in your opinion Mr. Broderick has the functionality needed for Sedentary work as defined below on a part-time basis (4 hours per day, 5 days per week)*

    *__ I agree that Mr. Broderick is currently able to perform Sedentary Work on a part-time basis.*
    *__ I disagree that Mr. Broderick is currently able to perform Sedentary Work on a part-time basis.*

20.     Dr. Roushdy returned Hartford's correspondence and marked that he agreed with two of the statements, namely: (1) that Plaintiff was able to return to part-time sedentary work; and (2) that Plaintiff was able to return to full-time sedentary work. (*See* **Exh. 1**).

21. Dr. Roushdy's completed form was received by Hartford on 01/13/15. The same day, Hartford performed an employability analysis report ("EAR") for Plaintiff based on Dr. Roushdy's responses. The EAR indicated several jobs Plaintiff could perform given the lack of restrictions or limitations.

22. Hartford informed Plaintiff by letter dated 01/14/15 that his LTD benefits were terminated effective 12/29/14 (the day that Dr. Roushdy signed the form indicating Plaintiff was able to return to work) because he was no longer unable to perform his own occupation nor was he unable to perform any occupation. (*See* letter from Hartford to Plaintiff dated 01/14/15 attached as **Exhibit 2**).

23. Plaintiff appealed from Hartford's termination of his LTD benefits by letter dated 05/19/15.

24. While processing Plaintiff's appeal, Hartford requested updated medical records from Dr. Roushdy on 06/10/15. It also wrote to Dr. Roushdy that same day and asked "*[h]ave there been any changes to the information that you provided on December 29, 2014?*"

25. Dr. Roushdy responded to Hartford's 06/10/15 letter indicating there had not been any changes. (*See* Dr. Roushdy's response dated 06/19/15

attached as **Exhibit 3**). His office also provided Hartford with the requested medical records.

26. The medical records provided by Dr. Roushdy's office included several "Report of Workability" forms relaying Plaintiff's restrictions and limitations. The Report of Workability forms dated 12/15/14 and 01/08/15 indicate Plaintiff is restricted to working no more than 4 hours per day. There are no Reports of Workability indicating Plaintiff could return to work full-time.

27. Also within the medical records provided to Hartford are several office visit notes. In an office visit note dated 12/15/14, Dr. Roushdy mentions Plaintiff was returning to work with restrictions. Plaintiff is not seen by Dr. Roushdy again until 01/12/15. There is no indication in the medical records provided by Dr. Roushdy of any changes in Plaintiff's restrictions and limitations between 12/15/14 and 01/12/15.

28. Nowhere in Plaintiff's medical records does Dr. Roushdy state that Plaintiff is capable of returning to work without restrictions.

29. Despite the clear discrepancy between the information provided to Hartford by Dr. Roushdy on the 12/29/14 form and the information in Dr. Roushdy's medical records, Hartford did not call Dr. Roushdy to clarify Plaintiff's restrictions and limitations. Instead, it chose to rely on the

12/29/14 form over the information in Plaintiff's medical records and upheld its decision to deny Plaintiff's LTD benefits.

30.  At this time, Plaintiff has exhausted all administrative remedies available under the Plan.

### COUNT I–CLAIM FOR BENEFITS DUE UNDER AN ERISA BENEFIT PLAN PURSUANT TO 29 U.S.C. §1132(a)(1)(B)

31.  Plaintiff incorporates all preceding allegations in this complaint and further alleges as follows.

32.  Plaintiff satisfied the policy's definition of disability from the date of first entitlement through the present.

33.  Plaintiff was entitled to receive LTD benefit payments at all times since his date of first entitlement.

34.  Hartford's decision to terminate LTD benefit payments to Plaintiff is in breach of the policy and ERISA.

**WHEREFORE**, Plaintiff demands judgment against Hartford ordering the following:

(i)   Pay him all past due LTD benefits plus interest;

(ii)  Reinstate him into the LTD policy and commence the payment of monthly benefits going forward from the date of judgment according to the terms of the LTD policy;

(iii) Reimburse Plaintiff's costs, disbursements, and other expenses of this litigation, including reasonable attorneys' fees and experts' fees, pursuant to 29 U.S.C. §1132(g); and

(iv) Provide such other and further relief as the Court deems just and proper.

Dated: **December 8, 2015**   **Respectfully submitted:**

By: s/ Sarah J. Demers
Sarah J. Demers (#0392149)
Katherine L. MacKinnon (#170926)
LAW OFFICE OF KATHERINE L. MACKINNON, P.L.L.C.
3744 Huntington Avenue
St. Louis Park, MN 55416-4918
(952) 915-9215 (ph)
(952) 915-9217 (fax)
katemackinnon-atty@msn.com
***Counsel for Plaintiff Broderick***

9