# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Michael Broderick,

        Plaintiff,

    v.

Hartford Life and Accident Insurance Company,

        Defendant.

**MEMORANDUM OPINION
AND ORDER**
Civil No. 15-4315 ADM/FLN

_____

Sarah J. Demers, Esq., and Katherine L. MacKinnon, Esq., Law Office of Katherine L. MacKinnon PLLC, St. Paul, MN, on behalf of Plaintiff.

Scott A. Moriarity, Esq., Lockridge Grindal Nauen PLLP, Minneapolis, MN, on behalf of Defendant.

_____

## I.  INTRODUCTION

On November 17, 2016, the undersigned United States District Judge heard oral argument on Plaintiff Michael Broderick's ("Broderick") Motion for Summary Judgment [Docket No. 16] and Defendant Hartford Life and Accident Insurance Company's ("Hartford") Motion for Summary Judgment [Docket No. 20].  For the reasons stated below, Broderick's motion is granted in part and Hartford's motion is denied.

## II.  BACKGROUND

### A.  Work and Medical History

Broderick began working for Xcel Energy, Inc. ("Xcel") in 2006.  Moriarity Aff. [Docket No. 26] Ex. 1 (Administrative Record, hereinafter "AR") at HART304.  He last worked at Xcel as a phone service representative in the Credit and Collections department.  Id.

As a result of his injuries in a December 2010 car accident, there were several periods starting in July 2012, when Broderick was unable to work or able to work only part time.  Id. at

HART519–20, 537, 543, 551, 559, 592, 618–19.  His medical complications included neck pain, headaches, and tingling and numbness in his arms.  Id. at HART557, 559, 592, 618–19.  Broderick began receiving short term disability ("STD") benefits in July 2012 under Xcel's STD policy insured by Hartford.  Id. at HART572.

By January 13, 2013, Broderick had exhausted his STD benefits and was transitioned to long term disability ("LTD") benefits under Xcel's group LTD policy insured through Hartford.  Id. at HART561.  The LTD policy defines "Disability or Disabled" in relevant part as:

> You are prevented from performing one or more of the Essential Duties of:
>
> 1)      Your Occupation during the Elimination Period;
>
> 2)      Your Occupation, for the 24 month(s) following the Elimination Period . . . ; and
>
> 3)      after that, Any Occupation.

Id. at HART18.  "Essential Duty" is defined to include ""Your ability to work the number of hours in Your regularly scheduled work week."  Id.

Broderick was on LTD from January 14, 2013 to May 27, 2014 due to his inability to work full time.  Id. at HART172, 175.  During this time period, Broderick had three surgeries: for neck pain in February 2013, for hip pain in June 2013, and for nerve decompression in his right elbow and a carpal tunnel release in February 2014.  Id. at HART398, 411, 461, 476.  On June 16, 2014, Broderick returned to a full-time work schedule.  Id. at HART389.

**B.  Radiofrequency Ablation Procedure and Subsequent Work Restrictions**

In September 2014, Broderick stopped working due to neck pain and headaches.  Id. at

HART363–64.  His orthopedist, Dr. Sherif Roushdy ("Dr. Roushdy"), wrote to Hartford on

October 8, 2014, that he had seen Broderick "and kept him off work because of the increasing

headache and inability to concentrate and process information."  Id. at HART374.  He also

explained that Broderick would be undergoing a radiofrequency ablative ("RFA") procedure,

and that Dr. Roushdy would "reevaluate his condition and likely send him back to work

thereafter."  Id.

On December 3, 2014, Dr. Roushdy performed the RFA on Broderick without

complications.  Id. at HART272–74.  At a follow-up exam with Dr. Roushdy on December 15,

2014, Broderick reported that he had a 70–80% improvement in his pain, was taking pain

medications only "as needed, but very rarely," and wanted to discuss going back to work.

HART270.  Broderick reported his pain level as 2 on a 10-point scale.  Id.  Dr. Roushdy's notes

from this exam state:  "We will have him go back to work with some restrictions."  Id. at

HART271.  Consistent with this statement, Dr. Roushdy completed a Report of Workability

form specifying that Broderick could return to work on December 16, 2014 with restrictions.  Id.

at HART278.  Specifically, Broderick was restricted to working four hours per day, 20 hours per

week for four weeks, and was restricted from lifting, carrying, pushing or pulling anything over

20 pounds.  Id.  The Report of Workability form included a section titled "Permanent

Disability," which gives the physician the option of answering "Yes," "No," or "Undetermined."

Id.  Dr. Roushdy left this portion of the form blank.  Id.

Due to the holidays, Xcel did not schedule Broderick to return to work until January 19,

2015.  Id. at HART283.  On January 8, 2015, Dr. Roushdy completed another Report of

Workability form for Broderick, stating that he could return to work with restrictions on January

19, 2015.  Id. at HART279.  Dr. Roushdy again restricted Broderick to working four hours per

day, 20 hours per week for four weeks; restricted him from lifting, carrying, pushing or pulling

anything over 20 pounds; and left the "Permanent Disability" portion of the form blank.  Id.

On January 12, 2015, before he had resumed work at Xcel, Broderick had a follow-up

appointment with Dr. Roushdy.  Id. at HART268.  At that appointment, Broderick complained of

neck pain and stated there was a "new feeling of numbness and tingling" in his arms.  Id.  He

described his pain level as 6 on a 10-point scale.  Id.  Dr. Roushdy recommended that Broderick

continue taking the opioid pain medication that had already been prescribed to him at the time of

the RFA procedure, and to also take 600 mg of Advil three times per day for 14 days.  Id. at

HART269.

On February 5, 2015, Dr. Roushdy approved an early refill of Broderick's pain

medication due to his increased pain.  Id. at HART267.  The next day, Dr. Roushdy completed a

Report of Workability form ordering Broderick to be completely off work from February 4 to

February 16, 2015.  Id. at HART280.  No other restrictions were imposed.  Id.  In the

"Permanent Disability" section of the form, Dr. Roushdy checked the answer for

"Undetermined."  Id.

On February 16, 2015, Broderick reported "unbearable" neck pain at a follow-up exam

with Dr. Roushdy.  HART265.  Broderick told Dr. Roushdy that he had been doing well and

returned to work, but that about 10 days ago he began experiencing pain.  He described his pain

level as 7 out of 10.  Id.  After examining Broderick, Dr. Roushdy completed a Report of

Workability form ordering him to be off work for six weeks beginning February 16, 2015. HART281. No weight restrictions were imposed, and the "Permanent Disability" portion of the form was left blank. Id. Dr. Roushdy also ordered Broderick to undergo a work hardening program. Id. at HART266, HART281.

On March 27, 2015, Broderick returned to Dr. Roushdy to discuss work forms given his cervical pain. Id. at HART262. Broderick reported his pain level at this appointment at 7 out of 10. Id. He informed Dr. Roushdy that he had been doing physical therapy and would be starting the work hardening program that day. Id. Dr. Roushdy stated that he would "adjust [Broderick's] workability according to what the PT schedule[d]." On April 14, 2015, Dr. Roushdy refilled Broderick's opioid pain medication. Id. at HART261.

On May 7, 2015, Broderick came to Dr. Roushdy's office "without any appointment demanding to discuss his care." Id. at HART282. Broderick informed Dr. Roushdy's staff that he "needed a workability to return to work without restrictions for four hours per day due to training at work, that was required for him to be at." Id. Dr. Roushdy noted:

> Mr. Broderick had the radiofrequency ablative procedure followed by a slow return to work with limitations as far as hours. He was unable to tolerate that. A work hardening program was ordered but he was unable to do it due to the extreme physical demands. As a result I took him off work a few months ago. . . . He initially wanted to have a renewal of his hydrocodone/acetaminophen which was done. He later on said that he does not need this prescription renewed once more. Patient kept arguing the issue of workability. . . . Mr. Broderick kept on asking for a dictated letter as to what was done before. . . .
>
> I advised him that I did take him off work because of the possibility for soft tissue injury however he would certainly need to go back to some kind of rebuilding of his muscle function through physical therapy even though it might be spaced out enough to allow rebuilding of the muscles of his neck as a result of the injury that he

5

suffered previously.  I advised patient that this is the extent of what I can do for him and also that I am willing to provide any further information once needed by his insurance company to optimize his condition.

Id.

## C.  Long Term Disability Claim Denial

After Broderick's RFA procedure in early December 2014, Hartford sent Dr. Roushdy a form that it had created to elicit Dr. Roushdy's opinion about Broderick's "ability to return to work (either at his present occupation or any other occupation) based on the results of this recent procedure."  Id. at HART251.  The form stated in relevant part:

Based on your most recent physical exam, please address the following:

- Please advise if in your opinion Mr. Broderick has the functionality needed for Sedentary Work as defined below on a full-time basis (8 hours a day, 5 days a week) . . .

    _____ I agree that Mr. Broderick is currently able to perform Sedentary Work on a full-time basis.

    _____ I disagree that Mr. Broderick is currently able to perform Sedentary Work on a full-time basis.

- Please advise if in your opinion Mr. Broderick has the functionality needed to for Sedentary Work as defined below on a part-time basis (4 hours a day, 5 days a week).

    _____ I agree that Mr. Broderick is currently able to perform Sedentary Work on a part-time basis.

    _____ I disagree that Mr. Broderick is currently able to perform Sedentary Work on a part-time basis.

Id. at HART251–52.  In a reply signed on December 29, 2014 but not faxed until January 13, 2015, Dr. Roushdy indicated through check marks on the form that Broderick was currently able to perform both full-time and part-time sedentary work.  Id. at HART250–53.  Dr. Roushdy

made no mention of the Report of Workability forms he had completed on December 15, 2014 and January 8, 2015 that restricted Broderick to working four hours per day, 20 hours per week for four weeks.  See id.  Thus, at the time Hartford received the form from Dr. Roushdy on January 13, 2015, it was not aware of the restrictions he had imposed on Broderick's return to work.

By letter dated January 14, 2015, Hartford terminated Broderick's LTD benefits as of December 29, 2014.  Id. at HART153–60.  Relying on the form Dr. Roushdy had signed on December 29, Hartford determined that Broderick could resume full-time sedentary work.  Id. at HART156–58.

## D.  Appeal of Claim Denial

Broderick appealed from the termination of his LTD benefits by letter dated May 19, 2015.  Id. at HART297.  In the letter, Broderick explained that Dr. Roushdy had restricted him to returning to work part time on December 16, 2014, that he returned to work January 19, 2015 pursuant to his employment arrangement with Xcel, and that his pain increased and he again stopped working.  Id.  Broderick further stated that he attended four sessions of a work hardening program provided by the Courage Kenny Allina clinics that resulted in increased pain, and the program therapist, Chris Hallenberg, advised him that he was "unable to work any occupation for an extended amount of time."  Id.  Broderick also stated that he "followed up with Dr. Roushdy at Advanced Spine Clinic and he took me out of work permanently following the advice of the therapist.  I would have documentation available as requested."  Id.  Upon receiving the appeal, Hartford sent Broderick a May 27, 2015 letter requesting him to complete authorization forms so that Hartford could obtain the information necessary to evaluate his

appeal.  Id. at HART151.

On June 3, 2015, during Hartford's investigation of Broderick's appeal, Xcel sent Hartford an email summarizing Broderick's return to work afer his RFA procedure.  Id. at HART283.  The email explained that "[o]n 12/16/14 we received a release for [Broderick] to return to work at 4 hours per day, 5 days per week.  Due to the holidays, we were not able to bring him back to work until 1/19/15.  It was anticipated that after one month of working part time he would be able to work full-time hours.  However, on 2/4/15 we received a note from his doctor taking him off of work completely.  He has not been at work since 2/3/15."  Id.  Attached to the email were Broderick's medical records from Dr. Roushdy's office in 2015, including the Report of Workability forms showing that Dr. Roushdy had ordered Broderick to return to part-time work in January, had taken him off work completely in February, and had also ordered a work hardening program for him in February.  Id. at HART287–96.

Upon receiving this information, the Appeal Specialist at Hartford noted the discrepancy between these medical records and the form signed by Dr. Roushdy on December 29, 2014 stating that Broderick could perform part-time and full-time sedentary work.  Id. at HART41.  On June 10, 2015, the Appeal Specialist faxed a form to Dr. Roushdy that stated in relevant part:

> We are reviewing a Long Term Disability claim for Mr. Michael Broderick.  We have attached a copy of correspondence that you completed on December 29, 2014.  Have there been any changes to the information you provided on December 29, 2014?
>
> ___ No
>
> ___ Yes
>
> If yes, please provide our office with a list of these changes:
>
> The date the changes became applicable _____

> Please provide any medical records that will support your clinical
> rationale for any applicable changes.

Id. at HART248.  Dr. Roushdy circled the word "No," and wrote "last visit 3/27/15" next to the

circled answer.  Id.  In the space below the sentence requesting medical records, Dr. Roushdy

wrote, "He was last seen in our office 3/27/15."  Id.  He signed the form, dated it June 19, 2015,

and returned it by fax on June 23, 2015.  Id.

Hartford also received from Dr. Roushdy's office Broderick's medical records from

October 2014 to present.  Id. at HART255–82.  The medical records included Dr. Roushdy's

exam notes from Broderick's office visits, records of Broderick's prescription refills, and the

Report of Workability forms completed by Dr. Roushdy in December 2014, January 2015, and

February 2015.  Id.

On June 29, 2015, Hartford's Appeal Specialist sent Broderick a letter informing him that

Hartford was upholding the decision to terminate Broderick's LTD benefits.  Id. at

HART142–46.  The letter summarized the office visit notes and Report of Workability forms

that Hartford had received from Dr. Roushdy.  Id. at HART143–44.  The letter also referenced

the form Dr. Roushdy signed on December 29, 2014 stating that Broderick was capable of

performing both full time and part time sedentary work, and the form Dr. Roushdy signed on

June 19, 2015.  Hartford interpreted the June 19 form as confirming "that there had been no

changes to his assessment of [Broderick's] functionality on December 29, 2014."  Id. at

HART144.  The letter stated that Hartford was denying Broderick's appeal because:

> The weight of the medical evidence indicates that you were capable
> of performing full time sedentary work effective December 29, 2014.
> . . . Although we understand that you have ongoing symptoms that
> you believe precludes [sic] you from working, the medical evidence
> does not support that these symptoms are of such severity that you

would be precluded you [sic] from performing Your Occupation effective December 29, 2014 and Any Occupation effective January 14, 2015.

Following a complete review of the information in your claim file, including your physician's opinions and your subjective complaints, the Hartford's Appeal Unit finds that you do not meet the Policy definition of Disability beyond December 2014 since you are longer [sic] precluded from performing the Essential Duties of Your Occupation.

Id. at HART145.

Although the letter referenced the Report of Workability forms, it did not explain why the forms were discredited. Nor did the letter include an analysis of the medical evidence or the reason for concluding that the weight of such evidence supported the conclusion that Broderick was no longer disabled as of December 29, 2014.

## E. Present Action

On December 8, 2015, Broderick filed this action under the Federal Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq. ("ERISA"), seeking to overturn Hartford's decision to terminate his LTD benefits. The parties have filed cross motions for summary judgment.

## III. DISCUSSION

## A. Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be rendered if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. On a motion for summary judgment, the court views the evidence in the light most favorable to the nonmoving party. Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995). However, the nonmoving party may not "rest on mere allegations or denials

but must demonstrate on the record the existence of specific facts which create a genuine issue

for trial." Krenik v. Cty. of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

      If evidence sufficient to permit a reasonable jury to return a verdict in favor of the

nonmoving party has been presented, summary judgment is inappropriate. Id. However, "the

mere existence of some alleged factual dispute between the parties is not sufficient by itself to

deny summary judgment. . . .  Instead, 'the dispute must be outcome determinative under

prevailing law.'" Get Away Club, Inc. v. Coleman, 969 F.2d 664, 666 (8th Cir. 1992) (citation

omitted).  "[S]ummary judgment need not be denied merely to satisfy a litigant's speculative

hope of finding some evidence that might tend to support a complaint." Krenik, 47 F.3d at 959.

## B.  Abuse of Discretion Standard

      Under ERISA,  a plan participant or beneficiary may seek judicial review of a denial of

benefits by the plan administrator.  29 U.S.C. § 1132(a)(1)(B).  When benefits have been denied

to a plan participant, the plan administrator must "set[] forth the specific reasons for such denial,

written in a manner calculated to be understood by the participant," and must afford the plan

participant a "full and fair review by the appropriate named fiduciary of the decision denying the

claim."  29 U.S.C. § 1133.

      The Supreme Court has held that when a plan gives an administrator discretionary

authority to determine eligibility for benefits or to construe the terms of the plan, an

administrator's decision is to be reviewed under the abuse of discretion standard. Firestone Tire

& Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989); King v. Hartford Life & Acc. Ins. Co., 414

F.3d 994, 998–99 (8th Cir. 2005) (en banc).  Hartford's LTD plan includes the following

language:  "We have full discretion and authority to determine eligibility for benefits and to

construe and interpret all terms and provisions of The Policy."  AR at HART17.  The parties

agree that this language confers discretion upon Hartford and that the abuse of discretion

standard of review applies.

Under the abuse-of-discretion standard, a court examines whether the plan

administrator's decision was reasonable.  Willcox v. Liberty Life Assur. Co. of Boston, 552 F.3d

693, 700 (8th Cir. 2009).  A plan administrator's decision must be affirmed if a "reasonable

person could have reached a similar decision, given the evidence before him, not that a

reasonable person would have reached that decision."  Prezioso v. Prudential Ins. Co. of Am.,

748 F.3d 797, 805 (8th Cir. 2014) (quoting Ferrari v. Teachers Ins. & Annuity Ass'n, 278 F.3d

801, 807 (8th Cir. 2002) (emphases in original)).

Although the abuse of discretion standard is deferential, it is "not tantamount to rubber-

stamping the result."  Torres v. UNUM Life Ins. Co. of Am., 405 F.3d 670, 680 (8th Cir. 2005).

A reasonable decision must be supported by substantial evidence.  Id.; Wise v. Kind & Knox

Gelatin, Inc., 429 F.3d 1188, 1190 (8th Cir. 2005).  "Substantial evidence is more than a mere

scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion.  Both the quantity and quality of evidence may be considered."  Norris v.

Citibank, N.A. Disability Plan (501), 308 F.3d 880, 884 (8th Cir. 2002).  Additionally, "an

administrator cannot simply ignore relevant evidence or 'arbitrarily refuse to credit a claimant's

reliable evidence.'"  Waldoch v. Medtronic, Inc., 757 F.3d 822, 833 (8th Cir. 2014) (quoting

Willcox, 552 F.3d at 701) (quoting in turn Black & Decker Disability Plan v. Nord, 538 U.S.

822, 834 (2003)).

**C. Analysis**

**1. Lack of Substantial Evidence**

Broderick argues that Hartford's decision to uphold the denial of his LTD benefits is an abuse of discretion because it is based solely on two confusing and ambiguous pieces of evidence:  1) the form signed by Dr. Roushdy on December 29, 2014 that contradicted Broderick's medical records and the work restrictions imposed by Dr. Roushdy, and 2) the form signed by Dr. Roushdy on June 19, 2015 that failed to clarify his December 29, 2014 opinion. Broderick contends the quantity and quality of these two documents are insufficient to constitute substantial evidence that Hartford's decision was reasonable.  The Court agrees.

**a. Quality**

With respect to quality, the December 29, 2014 form plainly contradicts Dr. Roushdy's own work restrictions that were in place for Broderick at that time.  Two weeks before signing the December 29 form, Dr. Roushdy restricted Broderick to part-time work for the next four weeks.  Hartford argues that Dr. Roushdy's opinion on December 29 that Broderick could work full time is attributable to the marked improvement Broderick reported during his December 15, 2014 exam.  However, Dr. Roushdy was aware of this improvement at the time he imposed the four-week work restriction.  Nothing transpired in the two weeks after the December 15 appointment that would have caused Dr. Roushdy on December 29 to alter his earlier opinion that Broderick was not capable of returning to full-time work for four weeks.  Had Dr. Roushdy thought on December 15 that Broderick's improvement warranted only a two-week work restriction he could have imposed this shorter restriction, but he did not.  Further diminishing the quality of the December 29 form—which was a Hartford form completed by Dr. Roushdy—is

that Dr. Roushdy indicated that Broderick could perform both full-time <u>and</u> part-time work.  This answer, particularly when viewed together with Dr. Roushdy's December 15 work restrictions, required further explanation from Dr. Roushdy about the meaning of this confusing response.  Yet Dr. Roushdy provided no explanation, analysis, or reasoning in the December 29, 2014 form for why he indicated that Broderick was, on that day, capable of performing sedentary work on a full-time and part-time basis.  Therefore, the December 29, 2014 form is not "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" that Broderick was no longer disabled as of that date.  <u>Norris</u>, 308 F.3d at 884.

The quality of the June 19, 2015 form from Dr. Roushdy fares no better.  That form was elicited from Hartford based on its review of some of Broderick's medical records and the realization that Dr. Roushdy's December 29 form stating Broderick was capable of full-time work was at odds with the work restrictions he had imposed on January 8, 2015, February 6, 2015, and February 16, 2015.  <u>See</u> AR at HART41.  Hartford concedes that the December 29 form "required further investigation."  Def.'s Reply Mem. Supp. Summ. J. [Docket No. 29] at 4. The June 19 form asked Dr. Roushdy to indicate "No" or "Yes" to whether there had "been any changes to the information [he] provided on December 29 2014, " and "[i]f yes, please provide our office with a list of these changes."[1]  AR at HART248.  Dr. Roushdy's "No" answer, without further explanation, fails to shed light on the confusion that Hartford was attempting to clarify. If nothing had changed since Dr. Roushdy's December 29, 2014 form stating Broderick was

---

[1]  It is not certain if Dr. Roushdy interpreted this question to mean (1) whether Dr. Roushdy had changed his opinion on whether Broderick was able to perform sedentary work on a full-time basis in December 2014, or (2) whether Broderick's ability to perform full-time work had changed since December 2014.

capable of full-time sedentary work, why had Dr. Roushdy limited him to part-time work in

January 2015 and taken him off work completely in February 2015?  Why had he indicated on

February 6, 2015 that it was "undetermined" whether Broderick had a permanent disability and

ordered a work hardening program on February 16, 2015?  Why did he continue to refill, and at

times increase, Broderick's opioid pain medication?  Why was he willing in March 2015 to

adjust Broderick's workability to what the physical therapist scheduled?  Why had he noted in

May 2015 that Broderick's RFA procedure was followed by a slow return to work with

limitations as to the number of hours worked and that Broderick was unable to tolerate that?

Because the June 19, 2015 form fails to answer any of these questions, it also is not "such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

Norris, 308 F.3d at 884; see also Torres, 405 F.3d at 681–82 (holding that a plan administrator's

failure to probe issues that were directly relevant to plaintiff's disability determination

constituted abuse of discretion).

### b.  Quantity

The quantity of the evidence relied on by Hartford to conclude that Broderick was

capable of full-time sedentary work—namely, the two fill-in-the-blank forms created by

Hartford and signed by Dr. Roushdy in December 2014 and June 2015—is nowhere near the

amount of evidence showing Broderick was restricted from full-time sedentary work on

December 29, 2014, and in the months that followed.  Dr. Roushdy's exam notes and Report of

Workability forms consistently show that he had restricted Broderick from returning to full-time

sedentary work from December 15, 2014 until at least the end of March, and had ordered a work

hardening program for Broderick following a failed attempt to return to work.  Rather than

probing this relevant, considerable evidence and attempting to reconcile it with Dr. Roushdy's

conflicting forms, Hartford seized on Dr. Roushdy's circling the word "no" on a form in June

2015 indicating that nothing had changed since December 2014, and accepted the answer

without explanation.  "[W]here the evidence in support of the decision does not ring true and is

so overwhelmed by contrary evidence, the administrative decision is unreasonable and will not

stand."  Donaho v. FMC Corp., 74 F.3d 894, 901 (8th Cir. 1996).  Given the amount of evidence

to the contrary, a reasonable mind would not have accepted Dr. Roushdy's unexplained

responses on Hartford's two forms as adequate to conclude that Broderick was capable of full-

time sedentary work on December 29, 2014.

Hartford contends that in addition to Dr. Roushdy's responses on the forms, the decision

to terminate benefits was supported by medical records showing that Broderick's subjective

complaints of pain were not corroborated by objective evidence.  For example, Dr. Roushdy's

exam notes consistently found no acute distress, observed no physical indicia of pain, swelling or

tenderness, and characterized Broderick's prognosis as "much resolved."  See, e.g.,

HART262–63, 265–66.  However, Hartford's June 29 appeal letter did not specifically articulate

this as a reason for denying his appeal.[2]  Nor do the Hartford Appeal Specialist's file notes make

any mention of uncorroborated complaints of pain or a lack of objective evidence.  A plan

administrator is required to set forth the specific reason for the denial of plan benefits, and a

---

[2] The appeal letter states that "[a]lthough we understand that you have ongoing symptoms that you believe precludes [sic] you from working, the medical evidence does not support that these symptoms are of such severity that you would be precluded from performing Your Occupation effective December 29, 2014 and Any Occupation effective January 14, 2015." HART145.  Aside from simply reciting Broderick's medical records, the letter provides no analysis of the medical evidence and no explanation for why Broderick's symptoms were not sufficiently severe to preclude him from performing full-time sedentary work.

reviewing court must not consider "post hoc rationales."  King, 414 F. 3d at 999; Marolt v.

Alliant Techsys., Inc., 146 F.3d 617, 620 (8th Cir. 1998) ("We will not permit ERISA claimants

denied the timely and specific explanation to which the law entitles them to be sandbagged by

after-the-fact plan interpretations devised for purposes of litigation.").[3]

For these reasons, Hartford's decision denying Broderick's benefits was not supported by

substantial evidence.

### 2.  Ignoring Relevant Evidence

In addition to lacking the substantial evidence required to support its decision to deny

benefits, Hartford also ignored the many medical records that contradict its conclusion that

Broderick was capable of performing full-time work on December 29, 2014.  "A plan

administrator abuses its discretion when it ignores relevant evidence."  Willcox, 552 F.3d at 701.

A plan administrator may not "focus[] on slivers of information that could be read to support a

denial of coverage and ignore[]—without explanation—a wealth of evidence that directly

contradict[s] [the] basis for denying coverage."  Id. at 702 (quoting Metropolitan Life Ins. Co. v.

Conger, 474 F.3d 258, 265 (6th Cir 2007) (emphases in original)).

Hartford argues that its June 29 letter denying Broderick's appeal cited all of the medical

records it had received from Dr. Roushdy, which shows that Hartford considered and did not

ignore this evidence.  While Hartford did recite Dr. Roushdy's exam notes and Report of

Workability forms in the letter denying Broderick's appeal, the letter fails to analyze this

_____

[3] Hartford also argues that it had reason to conclude that Broderick was exaggerating his impairments and that he had misrepresented his work restrictions to Hartford, which reasonably supports the conclusion that he was capable of resuming full-time work.  These reasons were not in any way articulated in the appeal letter or file notes, and the Court will not consider them here.

contradictory evidence or to provide any reason for why it was rejected.

Hartford also contends that it had no obligation to interpret the evidence in Broderick's favor, and that it was within Hartford's discretion to resolve any factual discrepancies relating to Broderick's functional capacity.  Again, however, the appeal letter lacks any explanation for how the factual inconsistencies were resolved and why Dr. Roushdy's confusing and unexplained answers on the December 29, 2014 and June 19, 2015 forms were credited over his Report of Workability forms and exam notes showing that Broderick was not capable of performing full-time sedentary work.

Hartford relies on Wakkinen v. UNUM Life Ins. Co., 531 F.3d 575, 583 (8th Cir. 2008) to argue that where a treating physician finds a claimant is not disabled but then issues a contradictory opinion, the plan administrator has discretion to resolve the conflict against a conclusion of disability.  In Wakkinen, the claimant's treatment records showed that his treating physician had urged him to return to work just days before determining him to be disabled.  Id. Because the treating physician's conclusion regarding disability was contradicted by his own treatment records, the Eighth Circuit found that it was not unreasonable for the plan administrator to reject the treating physician's conclusion.  Id.  Here, as in Wakkinen, Dr. Roushdy's December 29, 2014 and June 19, 2015 conclusions regarding Broderick's disability as of December 29, 2014 are contradicted by his own treatment records showing that he had restricted Broderick from full-time work at that time and beyond.  Yet instead of rejecting Dr. Roushdy's conclusions for being at odds with his treatment records, as was done in Wakkinen, Hartford chose to rely on those conclusions.  Thus, Wakkinen undermines Hartford's position because it holds that a treating physician's conclusion regarding disability may be rejected as

18

unreliable if the conclusion is contradicted by the physician's own treatment records.

In sum, Hartford failed to provide Broderick a full and fair review of the decision denying his LTD benefits.  29 U.S.C. § 1133.  Its decision to uphold the denial of Broderick's LTD benefits is unsupported by substantial evidence and ignores relevant evidence that directly contradicts Hartford's basis for denying coverage.  Thus, Hartford's decision to terminate Broderick's LTD claim effective December 29, 2014 is an abuse of discretion and must be reversed.

**D.  Remedy**

In addition to asking this Court to overturn the termination of his LTD benefits, Broderick seeks an order requiring Hartford to pay all LTD benefits owed to him at this time and to begin paying him monthly LTD benefits as allowed by the policy.  The parties have not briefed the issue of whether this remedy is appropriate.  Where an insurer has violated 29 U.S.C. § 1133(2)'s requirement to provide a full and fair review, the appropriate remedy is normally a remand for reconsideration.  Jalowiec v. Aetna Life Ins. Co., 155 F. Supp. 3d 915, 948–49 (D. Minn. 2015) (citing Brown v. J.B. Hunt Transp. Servs., Inc., 586 F.3d 1079, 1087 (8th Cir. 2009)).  Although Hartford clearly abused its discretion in denying Broderick's claim, the Court is not presently able to determine whether the remedy should be a remand or the award of benefits (and if so, what amount is appropriate).  The parties shall schedule a status conference with Magistrate Judge Franklin L. Noel to discuss whether the case should:  1) be remanded to Hartford, 2) remain with the Court for further briefing on the appropriate remedy, or 3) whether the parties can reach a settlement.

Broderick also requests an award of attorney's fees and costs pursuant to 29 U.S.C. §

19

1132(g)(1), which provides that "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." The Eighth Circuit has held that there is no presumption in favor of a fee award for prevailing plaintiffs in ERISA cases. <u>Martin v. Ark. Blue Cross & Blue Shield</u>, 299 F.3d 966, 969–72 (8th Cir. 2002). The issue of attorney's fees shall be among the items discussed during the status conference.

## IV.  CONCLUSION

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that:

1.  Plaintiff Michael Broderick's Motion for Summary Judgment [Docket No. 16] is **GRANTED IN PART** as follows:

    a.  Defendant Hartford Life and Accident Insurance Company's denial of Plaintiff's claim for LTD benefits is **REVERSED** because it was not supported by substantial evidence and was an abuse of discretion.

    b.  Plaintiff's request for an order requiring Hartford to pay past, current and future LTD benefits under the policy is **RESERVED**. The parties shall schedule and participate in a status conference with the magistrate judge to discuss the proper remedy.

    c.  Plaintiff's request for an award of attorney's fees and costs is **RESERVED**. The parties shall discuss the issue of attorney's fees and costs during the status conference.

2.  Defendant Hartford Life and Accident Insurance Company's Motion for Summary Judgment [Docket No. 20] is **DENIED**.

BY THE COURT:


_____ s/Ann D. Montgomery _____
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  February 16, 2017.